# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | Amy J. St. Eve |
|---|---|---|---|
| CASE NUMBER | 01 C 470 | DATE | January 3, 2003 |
| CASE TITLE | Warren v. Hotel Inter-Continental Chicago | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendant's Motion for Summary Judgment (#28-1); Defendant's Motion to Strike (#45-1)

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing [held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference [held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial [set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs [by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the following reasons, Defendant's motion for summary judgment (doc. #28-1) is **GRANTED**, and motion to strike (doc. #45-1) is **denied as unnecessary**. All pending dates and motions are terminated as moot. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JAN 06 2003 | |
| | Notified counsel by telephone. | | date docketed | 52 |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | Docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| JHC | courtroom deputy's initials | Date/time received in Central Clerk's Office | date mailed notice mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SARAH A. WARREN, )
)
Plaintiff, )
) NO. 01 C 470
v. )
) JUDGE WILLIAM J. HIBBLER
)
HOTEL INTER-CONTINENTAL )
CHICAGO, )
) **DOCKETED**
Defendant. )
JAN - 6 2003

MEMORANDUM OPINION AND ORDER

Plaintiff Sarah Warren ("Warren") filed this action against her former employer, Hotel Inter-Continental Chicago ("Inter-Continental" or "the hotel"), alleging sexual harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. Inter-Continental now moves for summary judgment, contending Warren has failed to demonstrate an actionable hostile work environment, and that the hotel did not properly respond to her complaint of sexual harassment. For the following reasons, Inter-Continental's motion for summary judgment is GRANTED.

STANDARD OF REVIEW

Summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). All facts and inferences are viewed in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, the use of self-serving assertions, without factual support in the record, will not defeat a motion for summary judgment. *James v. Sheahan*, 137 F.3d 1003, 1006 (7th Cir. 1998). Instead, the party opposing summary judgment must go beyond the pleadings and "set forth

specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250. Indeed, where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," there can be no genuine issue as to any material fact. *Celotex*, 477 U.S. at 322-23.

## STATEMENT OF FACTS[1]

Warren commenced her employment with Inter-Continental on or about June 27, 2000, as an Assistant Pastry Chef. In that position, Warren reported directly to Abner Rarang ("Rarang"), the hotel's Pastry Chef. Before Warren started the job, she met with Tina Taylor ("Taylor") in Human Resources, and at that time, signed for and received copies of Inter-Continental's "Standards of Conduct" and the "Corporate Code of Business Conduct." Both of those documents emphasized Inter-Continental's commitment to a harassment free workplace, including freedom

---

[1] The Court normally derives the pertinent background facts from the respective Local Rule 56.1 statement of undisputed material facts and counter-statement of material facts submitted by the parties. *See Malec v. Sanford*, 191 F.R.D. 581, 583 (N.D. Ill. 2000) ("Statements of material facts are the vehicle through which counsel identifies the relevant facts and the evidence establishing those facts."). Here, Inter-Continental, as the moving party, filed such a statement in compliance with the local rules. In response, Warren admitted many of Inter-Continental's facts, but then also proceeded to set forth her own additional factual assertions. That was improper. *See Guzman v. Abbott Labs.*, 59 F. Supp. 2d 747, 758-59 (N.D. Ill. 1999). If Warren believed there were further material facts the Court should consider, then she should have filed a separate statement of additional facts pursuant to Local Rule 56.1(b)(3)(B), to which Inter-Continental would have been required to respond. As a result of Warren's failure to strictly comply with the requirements of Local Rule 56.1, Inter-Continental seeks to have its factual statements deemed admitted. *See* L.R. 56.1(b)(3)(B) (material facts set forth in the moving party's statement "will be deemed to be admitted unless controverted by the statement of the opposing party"). Inter-Continental also moves to strike facts it contends are not supported by admissible evidence. *See Malec*, 191 F.R.D. at 585. While Inter-Continental's arguments are well-founded, the Court nonetheless denies the motion to strike and deem admitted as unnecessary. The Court will thoroughly review the factual contentions in the hotel's statement and Warren's response, including the citations to the record, and decide which facts should be taken as true for purposes of summary judgment, and which should be disregarded.

from an environment of sexual harassment, and that all employees were to cooperate in this regard. However, Warren does not recall receiving a copy of Inter-Continental's "New Member Handbook," which sets forth Inter-Continental's sexual harassment policy. Nevertheless, from her past experience at the Wyndham hotel, Warren acknowledged her awareness that complaints of harassment could usually be reported to anyone in the chain of command. Furthermore, there was a list of management officials and their phone numbers posted in Warren's work area.

Warren's transition to the Assistant Pastry Chef position was not a smooth one. Although Warren attended culinary school part-time, her subordinates complained that she lacked experience with respect to certain tasks. For example, Warren had problems "trimming" cakes, on two occasions burned a caramel sauce, and needed assistance making a butter cream frosting. Rarang frequently expressed his displeasure to Warren over her work performance. In addition, Warren passed out at work on July 8, 2000, after having consumed alcoholic beverages on the previous night. Rarang threatened to terminate Warren, who was still within her three-month probation period, if she appeared at work in that condition again.

Warren admits that at the time she was hired she did not meet the qualifications for an Assistant Pastry Chef. Nonetheless, she attributes her performance issues to the stress created by Rarang's alleged sexual harassment. Warren claims Rarang slapped her buttocks on July 13, 2000. She said nothing, though, because she believed he was aiming for her back. No other employees were present in the Pastry Kitchen at the time. Warren claims Rarang repeated this behavior on July 14, July 27, and August 5, and, in response, she still said nothing. On August 18, 2000, though, Warren says Rarang slapped her buttocks, and she told him to stop. Rarang allegedly did not respond. Finally, on September 7, 2000, Warren claims Rarang slapped her buttocks while another pastry employee was present some four feet away, and she shouted at him to "stop it."

-3-

Warren met with Rarang on September 8, 2000, and told him, for the first time, that she found his physical touching uncomfortable. Rarang never touched Warren again. That same day, Warren was responsible for preparing 500 sorbets for a wedding function the next day. However, when Rarang looked in the freezer and observed the sorbets were melted like water, he became upset and threatened to terminate Warren. After that incident, Warren took a couple of days off work.

Upon her return on September 13, 2000, Warren contacted Taylor in Human Resources and raised concerns about Rarang. Taylor sent Warren to Lou Costanzo ("Costanzo"), the hotel's Director of Human Resources. Warren complained to Costanzo about Rarang touching her on the buttocks, and told him she wanted out of the department and could not handle being Rarang's assistant. The next day, Costanzo met with Rarang to discuss Warren's allegations. Rarang admitted he "patted" Warren in the lower back area on several occasions, but denied touching her buttocks. Costanzo warned Rarang that any future occurrences of such conduct would result in discipline, and subsequently placed a written memorandum in Rarang's personnel file reflecting their discussion. Costanzo also interviewed the pastry employee Warren named as a possible witness; she told Costanzo she neither saw nor heard anything inappropriate.

On September 15, 2000, Costanzo met with Warren, Executive Chef Helmet Sussenbach and Food & Beverage Director Martin Schoenrock to discuss the results of the investigation. They offered Warren three options: 1) in light of the reprimand, remain as Rarang's assistant and attempt to resolve the situation; 2) move to a different hourly position working salads and room service; or 3) move to an hourly position in the "pantry" where she could earn more money than her salaried position as Assistant Pastry Chef if she worked overtime. Warren told Costanzo the hourly pantry position was "perfect." After working an hour in the ideal position, though, Warren

-4-

asked if she could go home early because she was not feeling well. Warren claims that as she left, she felt like her fellow employees were looking "the other way." Warren never returned to work at Inter-Continental.

Costanzo left three separate messages on Warren's answering machine when she did not call or show up to work on September 16, 2000. He told Warren if she was not comfortable with the resolution that was reached, he was willing to discuss alternatives. But on September 19, 2000, Warren informed Costanzo she was voluntarily terminating her employment. Costanzo asked Warren to reconsider, and offered her three additional options: 1) a transfer to the nearby Allerton Crown Plaza Hotel; 2) a leave of absence; or 3) any other solution she wanted the hotel to consider. Warren never responded to his offer. As a result, on October 11, 2000, Costanzo terminated Warren's employment due to her resignation.

After filing a charge with the EEOC and receiving a right to sue letter, Warren brought this lawsuit against Inter-Continental. In her complaint, Warren alleges that Inter-Continental failed to take appropriate corrective action after she complained of sexual harassment, and further, altered the terms and conditions of her employment by compelling her to accept a lower-paying position. Inter-Continental maintains it met its burden as an employer by attempting to prevent and promptly address any sexually harassing behavior that occurred.

## ANALYSIS

### I. Actionable Sexual Harassment

To prevail on her sexual harassment claim here, Warren must show that she was subjected to unwelcome conduct, on account of her sex, that was so severe and pervasive as to alter the conditions of her employment and create a hostile working environment. *Hilt-Dyson v. City of Chicago*, 282 F.2d 456, 462-63 (7th Cir. 2002). In addition, the resultant "hostile work environment"

must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998) (citation omitted). "In determining whether contested conduct actually creates an objectively hostile work environment, a number of factors may be considered including 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Hilt-Dyson*, 282 F.3d at 463, quoting *Faragher*, 524 U.S. at 787. "Isolated and minor incidents of questionable conduct generally will not warrant a conclusion of sexual harassment," *Hilt-Dyson*, 282 F.2d at 463, nor will "occasional vulgar banter, tinged with sexual innuendo, of coarse or boorish workers," *Baskerville v. Culligan Int'l*, 50 F.3d 428, 430 (7th Cir. 1995).

Inter-Continental does not dispute whether Warren subjectively believed her work environment to be hostile. Thus the Court focuses on whether Warren has come forward with enough evidence such that a reasonable jury would find Rarang's touching so severe that it created a hostile work environment. The Supreme Court has said that "the objective severity of the harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'" *Oncale v. Sundowner Offshore Serv., Inc.*, 523 U.S. 75, 81 (1998).

Warren maintains Rarang slapped her on her buttocks while they were working in the Pastry Kitchen on six different occasions over a six week period of time. According to Rarang, he did indeed touch Warren, but only on her back. Inter-Continental concedes that Rarang's conduct, regardless of where he touched Warren, constitutes inappropriate workplace behavior. Nevertheless, "[t]here are some forms of physical contact which, although unwelcome and uncomfortable for the person touched, are relatively minor. . . . A hand on the shoulder, a brief

hug, or a peck on the cheek lie at the end of the spectrum. . . . When the harassment moves beyond the sort of casual contact which (if it were consensual) might be expected between friendly co-workers, and manifests in more intimate, intrusive forms of contact, it becomes increasingly difficult to write the conduct off as a pedestrian annoyance." *Hostetler v. Quality Dining, Inc.*, 218 F.3d 798, 808 (7th Cir. 2000). For example, the Seventh Circuit found that two brief incidents where the supervisor rubbed the plaintiff's back but did not threaten, intimidate or humiliate her were not severe enough, *Hilt-Dyson*, 282 F.3d at 463, but rejected that notion where a co-worker forced his tongue into the plaintiff's mouth and later cornered her and attempted to unfasten her bra, *Hostetler*, 218 F.3d at 809.

Certainly the objectionable conduct alleged here does not involve the types of "physical, intimate and forcible" acts present in *Hostetler*. But on the other hand, slapping a subordinate's buttocks on an average of once per week, facts the Court must accept as true for purposes of summary judgment, is far more intrusive than a mere touch on the back, shoulder, arm, or leg. *Cf. Adusumilli v. City of Chicago*, 164 F.3d 353, 362 (7th Cir. 1998) (finding the unwanted touching of plaintiff's buttocks by a co-worker the most severe misconduct alleged but nonetheless not actionable because it involved a mild poke and occurred only once). If Warren were a member of a sports team coached by Rarang, his slapping her butt would make sense. *See Hilt-Dyson*, 282 F.3d at 463 (explaining that "an employee's claim must be evaluated in light of the social context in which events occurred"). However, they worked together in a kitchen preparing pastries and other desserts. It would not be unusual for casual touching to occur in that situation, particularly if their workspace was limited, but given the nature of the conduct and the frequency with which it occurred, the Court believes a reasonable person could conclude Rarang's repeated contact had

become serious enough to alter Warren's work environment. *Hostetler*, 218 F.3d at 808.² Although Inter-Continental suggests Rarang touched Warren simply to get her attention, that contention does not lead to judgment as a matter of law for the hotel, but rather identifies a genuine issue of material fact that cannot be resolved on summary judgment.

Moreover, Inter-Continental's argument that Rarang did not touch Warren because of her sex defies logic. The record must demonstrate that the harassment was motivated by gender, rather than a personal dislike, grudge, or workplace dispute. *Berry v. Delta Airlines, Inc.,*, 260 F.2d 803, 808 (7th Cir. 2001). Contrary to the hotel's beliefs, absent some other reasonable explanation for his behavior, which Inter-Continental has not come up with here, a male supervisor who slaps a female subordinate's buttocks is presumably engaging in sex based conduct. This might present a closer question if Rarang had touched Warren in a less intrusive place, such as on the arm, or if Inter-Continental could show Rarang also had touched male employees in a similar manner, but those are not the facts before this Court. Furthermore, even if Warren believes Rarang wanted her to quit so that he could hire his best friend to replace her, that contention would create yet another issue of fact for trial. Consequently, the Court finds Warren has sufficiently established that an objective person would view her work environment as hostile or abusive.

## *II. Employer Defense to Liability*

Nevertheless, even if Warren was able to prove at trial that Rarang's actions created a hostile working environment, liability under Title VII is not automatically imputed to Inter-Continental.

---

²The Court notes that Warren herself presents an additional reason for her work performance issues, namely her lack of experience. Throughout her Local Rule 56.1(b) response, Warren even admits she was not qualified for the Assistant Pastry Chef position. Thus, it is not clear to what extent, if any, Rarang's conduct truly impacted Warren's employment.

The Supreme Court has explained that "[a]n employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate authority over the employee." *Burlington Indus. v. Ellerth*, 524 U.S. 742, 765 (1998); *Faragher*, 524 U.S. at 807. However, "[w]hen no tangible employment action is taken, a defending employer may raise an affirmative defense liability or damages," consisting of two elements: "(a) that the employer exercised reasonable care to prevent and correct promptly any sexual harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Id.*

Warren contends the *Faragher/Ellerth* employer defense does not apply here because she suffered a tangible job action as a result of Rarang's sexual harassment when she was demoted and forced to leave her job. *See Faragher*, 524 U.S. at 808 ("No affirmative defense is available... when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment."). In *Johnson v. West*, the Seventh Circuit explained that *Faragher* and *Ellerth* contemplate holding an employer vicariously liable for tangible employment actions undertaken *by the harassing supervisor*. 218 F.3d 725, 731 (7th Cir. 2000) (emphasis in original). Thus, the court held that while the supervisor's actions may have created a hostile working environment for plaintiff, because he did not use his supervisory authority to have her fired, the employer could claim the affirmative defense. *Id.*

Likewise, the record here is devoid of any evidence suggesting Rarang played a role in the hotel's decision to offer Warren, among other things, a lesser paying job. Indeed, once Inter-Continental completed its investigation of Warren's complaint, she discussed her employment options with Costanzo, and other members of hotel management. Rarang was not involved. The Court therefore rejects Warren's argument of a tangible employment action by her supervisor as

unfounded,[3] and turns to the affirmative defense.

In her opposition brief to summary judgment, Warren makes no attempt whatsoever to contest Inter-Continental's argument that it satisfied both prongs of the defense.[4] Thus, she has waived any argument in opposition. *Blakely v. Brach & Brock Confections, Inc.*, 181 F. Supp. 2d 943, 951 (N.D. Ill. 2002). With respect to the first prong, Inter-Continental, by promulgating a written sexual harassment policy that spells out in layman's terms what behavior is unacceptable and sets forth a complaint procedure, has satisfied its initial burden. *Ellerth*, 524 U.S. at 765. Concerning the second prong, which assesses the reasonableness of the employee's actions, the evidence of record reflects that once Warren reported Rarang's conduct, Inter-Continental immediately conducted an investigation, and consequently reprimanded Rarang and offered Warren several options to rectify her concerns. Significantly, Rarang did not subject Warren to any further harassing conduct. Thus, it is clear Inter-Continental promptly and effectively responded to

---

[3]Warren also claims to have suffered a tangible job action when she was forced to leave her job because of Inter-Continental's inadequate response to her charge of sexual harassment. Even if the Court were to find the *Faragher* and *Ellerth* definitions of tangible job action encompass claims of constructive discharge, the facts, no matter how Warren twists them, do not show an involuntary resignation. A constructive discharge "occurs when an employee's discriminatory working conditions become so intolerable that a reasonable person in her position would be compelled to resign." *Perry v. Harris Chernin, Inc.*, 126 F.3d 1010, 1015 (7th Cir. 1997). First, Costanzo offered Warren three different alternatives, and she chose the one she deemed "perfect." Then when it appeared Warren might be having second thoughts after one day in the new position, Costanzo presented two additional alternatives, as well as an open invitation to suggest her ideal solution. Rather than discuss the matter further, Warren simply tendered her resignation. The Court is not at all persuaded by Warren's cries that she, a woman in her late 20s, was so intimidated by the sexual harassment process that she had no other choice but to leave her job. In fact, the evidence overwhelmingly demonstrates that quitting was only one of six other viable options Warren could have chosen. As such, her claim of constructive discharge fails. *See id.*

[4]Warren only challenged the applicability of the defense in light of her contention that Rarang's conduct caused a tangible job action.

Warren's complaint once it was lodged.[5] Moreover, as the Court laid out in footnote 3, *supra*, it was Warren who unreasonably refused to take advantage of corrective opportunities offered to her by the hotel. The Court thus concludes Inter-Continental has established that it fulfilled its obligations as an employer, and the *Faragher/Ellerth* defense to strict liability applies here.

## CONCLUSION

Accordingly, Inter-Continental's motion for summary judgment is granted.

**IT IS SO ORDERED.**

AMY J. ST. EVE, DISTRICT JUDGE

DATED: January 3, 2003

---

[5]Warren claims in her Local Rule 56.1(b) statement that she never received a copy of the hotel's official sexual harassment policy. However, as the Court has already noted, because she failed to argue this point in response to Inter-Continental's invocation of the affirmative defense, the Court will disregard her contention. But even if Warren's argument were properly before this Court, it is unclear that, given the other evidence in the record suggesting she had some understanding of the procedure for complaining about sexual harassment, this fact would make a difference. *See Hill v. American Gen. Fin. Inc.*, 218 F.3d 639, 644 (7th Cir. 2000).